UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ANDRE X. FAISON,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/8/15

**MEMORANDUM
OPINION & ORDER**

15 Cr. 186 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Andre X. Faison is charged with knowingly possessing a firearm after having

been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (Indictment (Dkt. No. 12))

Faison has moved to suppress a firearm obtained from his vehicle at the time of his arrest. (Dkt.

Nos. 27, 36) For the reasons stated below, Faison's suppression motion will be denied.

## BACKGROUND

### I. FAISON'S AFFIDAVIT

In support of his motion to suppress, Faison submitted an affidavit that sets forth

the following version of events: On January 15, 2015, Faison was "in possession of and driving

a green GMC Yukon [vehicle] that had been loaned to [him]." (Faison Aff. (Dkt. No. 39) ¶ 1)

He "parked the vehicle in the Bronx at the corner of Boston Road and Bristow Street," and

"reclined the driver's seat and went to sleep in the vehicle." (Id. ¶¶ 2-3) Shortly after he fell

asleep, "several law enforcement officers woke [him] up by flashing a flashlight in [his] eyes."

(Id. ¶ 4) Faison "observed the officers pointing their drawn firearms at [him]." (Id. ¶ 5) The

officers then "opened the driver['s] side door," "removed [Faison] from the vehicle," and

handcuffed him. (Id. ¶¶ 6-7) "The officers took [Faison] to their vehicle" – which was "parked

in the street" – and "placed [Faison] against the vehicle." (Id. ¶ 8)  After Faison was removed

from the vehicle, he "observed two officers searching the back seat of [his] vehicle[,] and two

more officers searching the front seat of [his] vehicle." (Id. ¶ 9)  "The officers who were holding

[Faison] [then] began searching the inside of [his] pockets," and "[o]ne of the officers removed a

small rolled cigarette from the inside pocket of [his] jacket." (Id. ¶¶ 10-11)  While the officers

were searching him, Faison "observed the officers [who were searching his car] break[] open the

radio, the dash[board], and the interior portion of the center console of [his] vehicle." (Id. ¶ 12)

## II.   <u>SUPPRESSION HEARING EVIDENCE</u>

On July 31, 2015, the Court conducted an evidentiary hearing concerning

Faison's suppression motion.  The Government called New York City Police Department

("NYPD") Officer Pete Flintoft and NYPD Officer Xavier Larino, both of whom are assigned to

the 42nd Precinct in the Bronx.  (Suppression Hearing Transcript (Dkt. No. 34) ("Hearing Tr.")

at 7-8, 49-50)  The evidence at the hearing included the following:

On January 15, 2015, at approximately 8:38 p.m., a 911 operator received a report

from an anonymous caller that there was "[a] green Yukon truck with a black guy in it, and he

was waving a gun around," on the corner of Boston Road and East 169th Street in the Bronx.

(Government Exhibit ("GX") 14; GX 19)  The caller reported that the vehicle's license plate was

"G-E-X twenty five seventy three," and that the vehicle was traveling towards East 168th Street.

(GX 14)

The 911 dispatcher transmitted this information to NYPD officers in the area via a

"radio run," which is "a call that comes over from dispatch" that – in this instance – can be heard

by "[e]very police officer and supervisor" in the 42nd and 44th Precincts.  (GX 15A; GX 19;

Hearing Tr. 50-51)  The dispatcher relayed the report as a "gun run," which is "a call in regards

2

to a person having a firearm on them." (GX 15A; Hearing Tr. 51)  The dispatcher reported that a "male black" "pulled out a firearm" and "was waving it inside of the truck." (GX 15A)  The dispatcher also reported that the vehicle in question was a green GMC Yukon with license plate GEX2573, and that it was traveling southbound on Boston Road towards East 168th Street.  (Id.)  Officer Larino heard the radio run while he was patrolling the 42nd Precinct, and he immediately responded to 169th Street and Boston Road.  Larino explained that a "gun run" "is a priority job" that "takes precedence over lower level crimes." (Hearing Tr. 53)  When Larino arrived at that location, he did not see a vehicle or person matching the description given by the dispatcher.  (Id. at 54)

           The dispatcher researched the vehicle's license plate number and informed officers that it was a 2003 green GMC Yukon registered to an individual who lived near the intersection of Boston Road and Bristow Street in the Bronx.  (GX 15A; Hearing Tr. 10-11)  NYPD Lieutenant Montalvo – a patrol supervisor – directed Officer Flintoft and NYPD Sergeant Jeune to "go by the vicinity of Boston Road and Bristow to look for a green GMC Yukon truck."  Montalvo explained that he had heard a radio run "about a man who was displaying a firearm from the vehicle."  (Hearing Tr. 10-11, 13)

           About one hour after the 911 call, Officer Flintoft and Sergeant Jeune arrived at Boston Road and Bristow Street.  (Id. at 11, 28)  As they approached that intersection, Flintoft observed a parked green GMC Yukon.  Flintoft also "[recognized] some of the license plate" from the information that Montalvo had provided.  (Id. at 11-12, 35)  Flintoft "came to a stop next to [the vehicle], slightly behind [it]," and Sergeant Jeune "put [a request] over the radio asking for additional units."  (Id. at 13)

3

When Officer Flintoft got out of the patrol car, he noticed "[a] strong odor of marijuana and saw [Faison] slumped over in the driver's seat [of the Yukon]," with his "torso and head . . . sort of leaning over to the passenger seat." (Id. at 13-14)  The smell of marijuana "got stronger as [the officers] got closer to the vehicle." (Id. at 14)  With his gun drawn "[f]or [his] safety," Flintoft walked "around the rear of the [vehicle] and went to the . . . front passenger window." (Id. at 14)  From the window, Flintoft observed that Faison "was still unconscious" and that "there was a marijuana cigarette on the [edge of the] [open] center console." (Id. at 14-16)  The marijuana cigarette was not burning, but Flintoft "could see the burnt brown edge of the cigarette and it was ashy."[1]  (Id. at 24, 35)

Flintoft then repeatedly knocked on the front passenger side window.  It took between 30 seconds and a minute for Faison to wake up. (Id. at 16-17, 31)  Flintoft then walked back around the vehicle to the driver's side.  The officers ordered Faison to get out of the vehicle, but Faison "was incoherent and wasn't really compliant."  Accordingly, Flintoft "helped [Jeune] take [Faison] out of the car." (Id. at 17)  When Flintoft opened the front driver's side door, he smelled marijuana. (Id.)  Faison "had to be assisted" in getting out of the car, and he was acting "[g]roggy and out of it," "was speaking jibberish," and "his demeanor . . . seemed like the demeanor of an intoxicated person." (Id. at 17, 47)  After the officers removed Faison from the car, they "asked him to put his hands on the hood of the police car." (Id. at 17-18)  He did not comply, so the officers "placed him in handcuffs . . . [f]or [their] safety." (Id. at 18)  Flintoft then frisked Faison, but found nothing. (Id. at 18)

Officer Larino drove to the scene after hearing a request for additional units at Boston Road and Bristow Street.  When Larino arrived, Faison was still inside his vehicle. (Id.

---

[1] The marijuana cigarette was received in evidence at the suppression hearing. (GX 2; Hearing Tr. 23-24)

4

at 56-57) Larino got out of his patrol car and saw Flintoft and Jeune "standing [at] the rear of the defendant's car." Larino heard Flintoft "ordering the defendant to step out of the vehicle." (Id.) Larino approached the vehicle – with his gun drawn "for [his] safety" – and he smelled marijuana "coming from inside the vehicle," with "[t]he odor [getting] stronger as [he] approached the vehicle." (Id. at 56-58) Larino "assisted Officer Flintoft in extracting [Faison] from the vehicle," and then he "went inside the vehicle . . . [t]o look for the weapon and also to see if [he] could find any other narcotics in the vehicle." (Id. at 58)

Officer Larino entered the vehicle through the open driver's side door, and he used a flashlight to illuminate the interior. (Id. at 65) When he "first used [his] flashlight to shine inside the car, [he] could not see a gun sticking up in the console area." (Id. at 66) Larino "searched the front driver side of the vehicle," searching "underneath the seat, [in] the door panel, and [in the] center console." (Id. at 59) After about 30 seconds, Larino found a firearm in the center console. (Id. at 60-61) Larino did not move or open anything in order to find the weapon, and nothing was covering the weapon. (Id. at 62; GX 11 (photograph showing a firearm in the recessed and open center console of the Yukon)) When he found the firearm, Larino yelled "gun" to "let the other officers know that there was a weapon inside the car." (Id. at 61) Larino stepped out of the vehicle at that point and did not continue his search for narcotics. (Id. at 61, 71) Larino and the other officers at the scene did not touch the gun because they wanted to "preserve evidence." (Id. at 44, 61)

After Faison was arrested, Flintoft drove the vehicle back to the precinct. The vehicle was seized as "arrest evidence." (Id. at 24-25) At the precinct, the evidence collection team took photographs of the vehicle (id. at 49; GX 11, 13A-13I), including a photograph of the firearm at issue lying inside the open center console. (GX 11) Larino and other officers also

5

searched the car in order to "take inventory of all of the items that were in the car," which is

"part of a standard police department practice." (Hearing Tr. 24-25)  During this search, officers

found a knife on the "floor of the [front] passenger side" of the vehicle. (Id. at 25-26)

After the evidence collection team took photographs of the vehicle, the evidence

was collected and vouchered. (Id. at 9)  The vouchered evidence includes the firearm, the knife,

the marijuana cigarette, a laser scope that was attached to the handgun, and the vehicle itself.

(Id. at 9-10; GX 1-9)

## DISCUSSION

Faison has moved to suppress the firearm found inside his vehicle at the time of

his arrest. (Dkt. Nos. 27, 36)  Faison concedes that "the[] police officers had a right to approach

the vehicle" and remove Faison from it based on the information provided by the 911 caller, but

he "contests the legality of the police actions following the driver's removal." (Def. Post-

Hearing Br. (Dkt. No. 36) at 1)  Faison argues that "[t]he officers crossed the threshold into the

vehicle and removed items from a closed container without a warrant," and that "[t]hose items,

more specifically the weapon in question, found in the console were not in plain view from the

outside of the vehicle." (Id.)

The Government argues, however, that the warrantless search of the vehicle was

justified because (1) "the officers had probable cause to believe that the vehicle contained

contraband"; (2) the search was incident to an arrest; and (3) "the search was supported by

reasonable suspicion that there was a weapon inside the vehicle to which [Faison] could gain

access."[2]  (Gov't Post-Hearing Opp. Br. (Dkt. No. 37) at 4)[3]

---

[2] The Government also argues that "the firearm in question would inevitably have been
discovered by NYPD officers during an inventory search of the vehicle at the police precinct."
(Gov't Post-Hearing Opp. Br. (Dkt. No. 37) at 4) "Under the inevitable discovery doctrine,

6

## I.     THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT

### A.     Applicable Law

"Under the 'automobile' exception to the warrant requirement, officers may

conduct a warrantless search of a vehicle if they have probable cause to believe it contains

contraband or other evidence of a crime." United States v. Wilson, 699 F.3d 235, 245 (2d Cir.

2012) (citations omitted). "'The scope of a warrantless search of an automobile . . . is defined by

the object of the search and the places in which there is probable cause to believe that it may be

found.'" Id. at 246 (quoting United States v. Ross, 456 U.S. 798, 824 (1982)) (alteration in

original). "Where the probable cause upon which the search is based 'extends to the entire

vehicle,' the permissible scope of a search pursuant to this exception includes '"every part of the

vehicle and its contents [including all containers and packages] that may conceal the object of

the search."'" United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010) (quoting United States

v. Harwood, 998 F.2d 91, 96 (2d Cir. 1993) (quoting Ross, 456 U.S. at 825)) (alteration in

'evidence that was illegally obtained will not be suppressed if the government can prove that the
evidence would have been obtained inevitably even if there had been no statutory or
constitutional violation.'" United States v. Mendez, 315 F.3d 132, 137 (internal quotation marks
and citations omitted). In order to demonstrate the applicability of the inevitable discovery
doctrine, the Government must show

> (1) that the police had legitimate custody of the vehicle or other property being
> searched, so that an inventory search would have been justified . . . ; (2) that when the
> police in the police agency in question conducted inventory searches, they did so
> pursuant to "established" or "standardized" procedures . . . ; and (3) that those
> inventory procedures would have "inevitably" led to the "discovery" of the
> challenged evidence.

Id. at 138 (citations omitted). Although Officer Flintoft testified that an inventory was taken
pursuant to a "standard police department practice (Hearing Tr. 24-25), the Government did not
elicit from either officer what that standard practice is. Officer Flintoft's passing reference to a
standard NYPD practice is not sufficient to demonstrate that the inventory search conducted of
Faison's vehicle was performed pursuant to "established" or "standardized" procedures. See
Mendez, 315 F.3d at 138.

[3] The page numbers referenced in this Order correspond to the page numbers designated by the
Electronic Case Filing system.

7

original); see also Harwood, 998 F.2d at 96 ("If the probable cause extends to the entire vehicle, the agent may conduct a warrantless search 'of every part of the vehicle and its contents [including all containers and packages] that may conceal the object of the search.'") (quoting Ross, 456 U.S. at 825) (alteration in Harwood).  Even where there is not probable cause to search an entire vehicle, "police may conduct a warrantless search of a container within a vehicle if they have probable cause to believe that the container holds contraband or evidence." United States v. DiMarco, No. 12 Cr. 205 (RPP), 2013 WL 444764, *8 n.6 (S.D.N.Y. Feb. 5, 2013).

"Probable cause to conduct a search 'exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched.'" Wilson, 699 F.3d at 245 (quoting United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004) (internal quotation marks and alterations omitted)); see also Navas, 597 F.3d at 497 ("[The automobile exception] permits law enforcement to conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband."). "Under New York Penal Law § 221.05, the possession of marijuana is a violation punishable by a fine of not more than one hundred dollars.  Because the possession of marijuana is unlawful, marijuana is a form of contraband." United States v. Colon, No. 10 Cr. 498 (RPP), 2011 WL 569874, at *12 (S.D.N.Y. Feb. 8, 2011) (citation omitted).

## B.    Analysis

Here, both Officer Flintoft and Officer Larino testified that they smelled marijuana when they approached Faison's vehicle. (Hearing Tr. 13-14, 56-57)  After Flintoft approached the vehicle and looked through the front passenger window, he observed a marijuana

8

cigarette on the edge of the center console. (Id. at 14)  Finally, when Faison – who was sitting in

the driver's seat – was instructed to get out of the vehicle, the officers observed that he was

groggy, was speaking jibberish, and appeared to be intoxicated. (Id. at 17, 47)  Having observed

the officers testify about these matters, this Court finds their testimony credible.

"The odor of marijuana coming from a vehicle can establish probable cause" to

believe that the vehicle contains contraband. Colon, 2011 WL 569874, at *12 (citing United

States v. Jackson, 652 F.2d 244, 252 n.6 (2d Cir. 1981) ("Probable cause can be established by a

suspicious sound as it can be by a suspicious smell or appearance[.]"); United States v. Martin,

No. 09-1382, 360 F. App'x 686, 690 (7th Cir. 2010)). "Upon encountering the suspicious smell,

Officers [Flintoft] and [Larino] had probable cause to believe that the car contained contraband,

namely, marijuana." Id. Flintoft's observation of a marijuana cigarette on the center console

merely confirmed that there was probable cause to believe that the vehicle contained evidence of

a crime.  In sum, at the time the search of the vehicle was conducted, the officers had probable

cause to believe that it contained marijuana.

Because there was probable cause to believe that the vehicle contained marijuana,

the officers were authorized to search "every part of the vehicle[,] . . . [including all containers or

compartments] that m[ight] conceal the object of the search." Harwood, 998 F.2d at 96 (internal

quotation marks and citations omitted).  Here, this Court accepts Officer Larino's testimony that

he discovered the firearm in the recessed center console, which was not covered.[4]  GX 11 shows

---

[4]  As noted above, Faison asserts in his affidavit that he "observed the officers breaking open the
radio, the dash, and the interior portion of the center console of my vehicle." (Faison Aff. (Dkt.
No. 39) ¶ 12)  While the Court has considered Faison's affidavit, the officers' testimony is
entitled to more weight because it was subject to cross-examination. See, e.g., United States v.
Fuentes, No. 07 Cr. 329 (SHS), 2007 WL 2319142, at *4 (S.D.N.Y. Aug. 10, 2007) (crediting
witness testimony over defendant's sworn statement regarding whether he gave consent); United
States v. Robles, 253 F. Supp. 2d 544, 549 n.14 (S.D.N.Y. 2002) (noting that courts "'give

the firearm in the uncovered recessed center console and is entirely consistent with Officer

Larino's testimony.[5]  In short, the officers were authorized to search the vehicle based on

evidence that it contained marijuana, and once inside the vehicle, the firearm was in plain view.

               Faison argues that the officers' testimony is not credible, however, because

"officers can easily come up with routine excuses to gain entry into vehicles . . . [such as]

[t]elling the court that the air smelled of marijuana smoke after . . . find[ing] a tiny unlit

cigarette. . . ." (Def. Post-Hearing Br. (Dkt. No. 36) at 9)  Faison asserts that "[y]ou can't smell

smoke through a closed glass window and a person who has been awoken from a deep sleep may

not be able to give quick answers and immediately become mobile." (Id.)  In his affidavit,

however, Faison does not dispute that he had been smoking marijuana or that he had a marijuana

cigarette in his car.  See Faison Aff. (Dkt. No. 39).  This Court finds the officers' account

entirely credible, and concludes that Faison possessed marijuana in his vehicle, that he had been

smoking it shortly before the officers arrived on the scene, that there was a strong odor of

marijuana near the vehicle, that the officers smelled marijuana when they approached the

---

greater weight to [witness] testimony, which was subject to cross examination, than to [sworn]
affidavits'") (quoting United States v. Gardner, 611 F.2d 770, 774 n.2 (9th Cir. 1980))
(alterations in original); United States v. Juliano, No. 99 Cr. 1197 (AGS), 2000 WL 1206745, at
*3 n.1 (S.D.N.Y. Aug. 24, 2000) (affording less weight to defendant's affidavit, because the
court could not assess the defendant's credibility and the testimony of Government witnesses
was "forthright and truthful") (citing United States v. Frank, 8 F. Supp. 2d 284, 291 (S.D.N.Y.
1998)).

[5]  Faison argues that Defense Exhibit A – a black and white photograph of the interior of the
Yukon – shows that the center console contains a "black cover," and no such cover is apparent in
the color photograph of the center console that is GX 11.  (Def. Br. (Dkt. No. 36) at 8)  Faison
argues that the "black cover" "would have laid over the gun exhibited in [GX] 11." (Id.)

Defense Exhibit A is a grainy black and white photograph.  It shows no black cover over the
center console.  There is a black area in the interior of the center console.  This appears to be a
shadow.  In any event, Defense Exhibit A is entirely consistent with Officer Larino's testimony
that he found the firearm in the uncovered, recessed center console in plain view.

vehicle, and that Officer Flintoft observed a marijuana cigarette inside the vehicle before Defendant was removed from the vehicle.

Faison also argues that "[t]he officers admit that they were not searching for marijuana," and thus the warrantless search of the vehicle is not justified based on the assertion that they had probable cause to believe that the vehicle contained marijuana. (Def. Post-Hearing Reply Br. (Dkt. No. 38) at 4)  In support of this argument, Faison cites two lines of Larino's testimony:

Q. So the answer would be, no, you did not search for narcotics?

A. No, I didn't search for narcotics.

(Hearing Tr. 71)

The excerpt quoted by Faison is misleading, however.  Immediately before this exchange, Larino testified as follows:

Q. You searched for narcotics?

A. I found the gun first, so I didn't search for narcotics.

Q. Did you not testify on direct that you also searched for narcotics in the vehicle?

A. That's the reason for entering the vehicle.

Q. The reason for entering the vehicle was to search for a weapon, right, because of the radio run?

A. It's for the weapon and narcotics.  The weapon takes priority over the narcotics.

Q. Well, as soon as you located a weapon in the console area, that priority was taken care of, did you then further search for narcotics?

A. I didn't step back in the vehicle.

(Id.)

Officer Larino's testimony makes clear that his "reason for entering the vehicle" was to search for marijuana. The fact that Larino's search for marijuana ended when he came upon the firearm in the center console does not undermine the conclusion that there was probable cause to believe that the vehicle contained marijuana, and that the basis for searching the vehicle was to search for marijuana. Officer Flintoft explained that nothing was disturbed in the vehicle once the firearm was discovered in order to "preserve evidence." (Hearing Tr. 44)

The search of Defendant's vehicle was justified under the automobile exception to the warrant requirement.

## II.   SEARCH INCIDENT TO ARREST

### A.   Applicable Law

"Among the exceptions to the warrant requirement is a search incident to a lawful arrest." Arizona v. Gant, 556 U.S. 332, 338 (2009). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." Id. "[C]ircumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." Id. at 335. As long as such a reasonable belief exists, this exception applies "'even after the arrestee has been secured and cannot access the interior of the vehicle.'" Cooper v. City of New Rochelle, 925 F. Supp. 2d 588, 611 (S.D.N.Y. 2013) (quoting United States v. Gonzalez, 441 F. App'x 31, 34 (2d Cir. 2011)). In such cases, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." Gant, 556 U.S. at 344.

**B.**     **Analysis**

Here, Officer Flintoft lawfully arrested Faison for marijuana possession based on (1) the strong odor of marijuana emanating from Faison's vehicle; (2) his observation of a marijuana cigarette on the center console of the vehicle; and (3) Faison's behavior when officers directed him to get out of the vehicle. See Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.") (citations omitted).  Moreover, given the odor of marijuana emanating from Faison's vehicle, it was "reasonable [for the officers] to believe that evidence of the offense of arrest might be found in the vehicle." Gant, 556 U.S. at 335.  Accordingly, the offense of arrest – marijuana possession – "suppl[ied] a basis for searching the passenger compartment of [Faison's] vehicle and any containers therein." Id. at 344.

Faison concedes that he "was arrested for a marijuana offense," but argues that the search incident to arrest exception does not apply because "[t]he officers admit that they were not searching for marijuana." (Def. Post-Hearing Reply Br. (Dkt. No. 38) at 4)  As noted above, however, Faison mischaracterizes Officer Larino's testimony.  Officer Larino testified that his "reason for entering the vehicle" was to search for marijuana.  (Hearing Tr. 71)

Accordingly, the search of Faison's vehicle was also justified as a search incident to Faison's arrest for marijuana possession.

## CONCLUSION

For the reasons stated above, Faison's motion to suppress is denied.

Dated: New York, New York
October 8, 2015

SO ORDERED.

Paul G. Gardephe
United States District Judge

14